**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| KEYOWN PRYOR,<br><br>Plaintiff,<br><br>v.<br><br>NATHAN BURTON, NYASIA JENKINS, JOHN DOE SUPERVISOR, ANDREW HERZOG, DANIEL ADELSPERGER, and JAMES DOE(S),<br><br>Defendants. | Case No. 2:26-CV-623<br><br>Chief Judge Sarah D. Morrison<br>Magistrate Judge S. Courter Shimeall<br><br>**Amended Complaint**<br><br>**(Jury Demand Endorsed Hereon)** |

## I. Introduction

1. This is a civil-rights action brought under 42 U.S.C. § 1983 and Ohio law arising (1) from a guard-facilitated inmate assault at Ross Correctional Institution on May 26, 2024, in which correctional officers unlocked Plaintiff's cell and allowed another inmate to enter and assault him while the officers stood by and permitted the attack to continue and (2) from officers' violent—and then indifferent—response to Plaintiff's need for medical and mental-health care in response to that assault.

2. Plaintiff alleges that Defendants Nyasia Jenkins, Nathan Burton, Andrew Herzog, and Daniel Adelsperger acted maliciously and sadistically to cause him harm, or, at a minimum, knowingly disregarded a substantial risk of serious harm to Plaintiff, thereby violating Plaintiff's rights in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

3. Plaintiff further alleges that after the assault Defendants failed to take reasonable action to protect Plaintiff from additional harm and failed to secure prompt medical and mental-health care despite obvious need.

4. Plaintiff further alleges supervisory misconduct and negligent hiring, retention, and supervision in connection with the events alleged herein.

## II. Jurisdiction and Venue

5. This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983.

6. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Ross County and Warren County, Ohio, within the Southern District of Ohio.

## III. Parties

8. Plaintiff Keyown Pryor is an individual who, at all times relevant, was an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") and housed at Ross Correctional Institution ("RCI") in Union Township, Ross County, Ohio and at Warren Correctional Institution ("WCI") in Turtlecreek Township, Warren County, Ohio. Plaintiff is presently incarcerated at Southern Ohio Correctional Facility.

9. Defendant Nyasia Jenkins is an individual who, at all times relevant, was a correctional officer at RCI. She is sued in her individual capacity

10. Defendant Nathan Burton is an individual who, at all times relevant, was a correctional officer at RCI. He is sued in his individual capacity

11. Defendant "John Doe Supervisor" is an individual whose true name is presently unknown and who was employed by ODRC and responsible, in whole or in part, for the supervision, training, hiring, retention, discipline, and/or continued employment of Defendants

Jenkins and Burton. This Defendant is sued in his or her individual capacity. Plaintiff will seek leave to amend this Complaint when this Defendant's identity is learned through discovery.

12. Defendant Andrew Herzog is an individual who, at all times relevant, was a lieutenant correctional officer at WCI. He is sued in his individual capacity.

13. Defendant Daniel Adelsperger is an individual who, at all times relevant, was a correctional officer at WCI. He is sued in his individual capacity.

14. Defendants "Unknown James Doe(s)" are individuals whose true names are presently unknown and who were employed by ODRC and responsible, in whole or in part, for denying Plaintiff medical treatment or the opportunity to remove OC spray for approximately 48 hours following the incidents of April 27, 2025 described below. These defendants are sued in their individual capacities. Plaintiff will seek leave to amend this Complaint when these Defendants' identities are learned through discovery.

**IV. Facts**

15. On May 26, 2024, Plaintiff was confined in a solid, concrete-block cell with a steel door in the 5A area of RCI.

16. In the weeks preceding, Plaintiff requested protection on at least two occasions because he believed a hit had been placed on him.

17. Despite those warnings, Defendants Nyasia Jenkins and Nathan Burton unlocked Plaintiff's cell and permitted another inmate, Turner (first name unknown), to enter Plaintiff's locked cell.

18. Once inside the cell, Turner physically assaulted Plaintiff while Jenkins and Burton remained outside the cell door and allowed the beating to continue for approximately two and a half minutes.

19. At no time did Plaintiff invite Turner into his cell or consent to Turner's entry.

20. The incident was captured on surveillance footage, which showed Burton and Jenkins letting inmate Turner into Plaintiff's cell at approximately 7:13:40 p.m., with both officers staying at the door while Turner was in the cell, and then letting Turner out of the cell at approximately 7:15:50 p.m.

21. Later that night, Plaintiff reported what had happened to him, which prompted an internal review of the surveillance footage and other evidence related to the incident. The review substantiated Plaintiff's account that Burton and Jenkins facilitated the assault on Plaintiff.

22. Even if Defendants Burton and Jenkins did not subjectively desire that Turner physically beat Plaintiff, opening a locked inmate's cell and allowing another inmate to enter created an obvious and substantial risk of serious harm to Plaintiff. Defendants also failed to take reasonable steps to prevent or stop the assault once Turner entered Plaintiff's cell.

23. On May 29, 2024, just 3 days after the assault on Plaintiff, Burton and Jenkins were terminated from their employment at RCI. In lieu of involuntary removal, Burton and Jenkins were allowed to "resign" with the understanding that their employment file would be coded as "Resigned—Not Recommended for Rehire."

24. The conduct of Defendants Jenkins and Burton in facilitating or otherwise allowing an assault on Plaintiff by another inmate was intentional, malicious, sadistic, willful, wanton, and undertaken in conscious disregard of a substantial risk of serious harm to Plaintiff.

25. The assault caused Plaintiff physical injury, pain, emotional distress, mental anguish, humiliation, fear, and other damages, some of which are ongoing. Plaintiff's emotional distress, mental anguish, humiliation, fear, and PTSD continue to this day.

26. Approximately two months after the assault, Plaintiff was moved to WCI from RCI. He continued to suffer from extreme emotional distress, mental anguish, humiliation, fear, and PTSD caused by the assault. He lived in constant fear of another assault perpetrated by inmates, staff, or both. A mental health liaison, was assigned to Plaintiff to help deal with these severe

problems as a result of the assault. Plaintiff was enrolled in a mental health class as a result of the assaults and had signed up to take additional mental-health courses. He remained in fear for his life. He was placed on mental-health (suicide) watch approximately six times in the year following the assault.

27. On or about April 27, 2025, Plaintiff suffered from an acute mental health episode caused by the May 26, 2024 assault, terrified of another attack by staff or fellow inmates. He was confined with another inmate in a solid, concrete-block cell with a steel door at WCI at the time.

28. Out of desperation, Plaintiff slit his wrist. Plaintiff was suicidal and no longer wanted to live. He also knew that, if he did live, he would be placed on mental-health watch and would likely be safe there. While on mental-health watch, WCI inmates are on camera at all times, thus making the likelihood of a staff or inmate assault far less likely.

29. Staff were alerted of Plaintiff's state. Pursuant to established policy, corrections officer Robert Robinson arrived at Plaintiff's cell, placed Plaintiff in handcuffs, and began escorting Plaintiff to receive care and treatment. Plaintiff's blood can be seen pooled on the floor. While Plaintiff and Robinson were on their way to the infirmary and/or mental-health watch, they encountered Defendant Herzog, a supervisor.

30. When Defendant Herzog learned that Robinson was escorting Plaintiff to receive care, Defendant Herzog responded, "Fuck no, take him back, you're not going nowhere."

31. Plaintiff pleaded with Defendant Herzog for care and the relative safety of mental-health watch, pointing out, "I'm bleeding, I'm bleeding." Defendant Herzog responded, "I don't give a shit." He ordered that Plaintiff be returned to his cell. Defendant Adelsperger assisted in Plaintiff's forced return to his cell contrary to policy and despite Plaintiff's critical medical and mental-health condition.

32. After Plaintiff was returned to his cell, he begged Defendant Herzog and Defendant Adelsperger not to place him back in the cell and, instead, to take him to the infirmary and to

mental-health-watch. Defendants ignored his pleas, ordering him to approach the chute i his cell door for removal of his handcuffs.Plaintiff knew that, without handcuffs, he would never be escorted to receive the care he needed. Accordingly, he begged Defendants Herzog and Adelsperger to allow him to keep the handcuffs on and to escort him to receive care. When they sought to deploy OC spray through the chute, Plaintiff blocked the chute. So defendants opened the cell door, and Defendant Adelsperger, at Defendant Herzog's direction, doused Plaintiff with at least 203 grams of OC spray.

33. Plaintiff was then placed on mental-health watch. Defendants Herzog, Adelsperger, and James Does refused to provide Plaintiff with any medical care. Defendants Herzog, Adelsperger, and James Does further refused to allow Plaintiff to take a shower for approximately 48 hours. Instead, Plaintiff left to sit in extreme physical, mental, and emotional pain, covered in OC spray and dried blood for two days.

34. Plaintiff has exhausted all available administrative remedies to the extent required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), or such remedies were unavailable, obstructed, or incapable of providing relief under the circumstances. Plaintiff timely requested access to grievance procedures and filed complaints by every means available to him to seek redress through internal administrative grievance procedures. Plaintiff has since requested copies of all documentation related to these grievances, but his requests for these documents have been denied.

## V. Causes of Action

### Count 1
### Cruel and Unusual Punishment and Excessive Force
### 42 U.S.C. § 1983—Eighth and Fourteenth Amendments
### (against Defendants Jenkins and Burton)

35. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

36. At all relevant times, Defendants Jenkins and Burton were acting under color of state law as correctional officers employed by the Ohio Department of Rehabilitation and Correction.

37. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain upon prisoners and bars force applied maliciously and sadistically to cause harm.

38. By intentionally unlocking Plaintiff's cell, allowing inmate Turner to enter, standing by while Turner assaulted Plaintiff, and then removing Turner after the assault had run its course, Defendants Jenkins and Burton used force against Plaintiff and/or caused force to be used against him maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.

39. The actions of Jenkins and Burton directly and proximately caused Plaintiff's injuries and damages.

40. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

**Count 2**
**Deliberate Indifference/Failure to Protect**
**42 U.S.C. § 1983—Eighth and Fourteenth Amendments**
**(against Defendants Jenkins and Burton)**

41. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

42. The Eighth Amendment imposes a duty on prison officials to take reasonable measures to protect prisoners from violence at the hands of other prisoners.

43. Defendants Jenkins and Burton knew of facts from which they could and did infer a substantial risk of serious harm to Plaintiff, including Plaintiff's prior requests for protection and the obvious danger of allowing another inmate into Plaintiff's locked cell.

44. Defendants consciously disregarded that substantial risk by unlocking Plaintiff's cell, allowing Turner to enter, failing to intervene promptly, and failing to take reasonable steps to protect Plaintiff from assault.

45. In the alternative, even if Defendants did not intend that Turner would attack Plaintiff, their conduct constituted deliberate indifference to a known and obvious risk of serious harm.

46. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

**Count 3**
**Deliberate Indifference to Medical Needs**
**42 U.S.C. § 1983—Eighth and Fourteenth Amendments**
**(against Defendants Jenkins and Burton)**

47. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

48. After the May 26, 2024 assault, Plaintiff exhibited serious medical needs, including physical injury, pain, and trauma.

49. Defendants knew of Plaintiff's serious needs, or those needs were sufficiently obvious that a reasonable officer would have recognized the necessity of prompt care.

50. Defendants failed to take reasonable steps to secure timely medical evaluation, treatment, and intervention for Plaintiff after the assault.

51. Defendants' acts and omissions constituted deliberate indifference to Plaintiff's serious medical needs.

52. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

**Count 4**
**Supervisory Liability under 42 U.S.C. § 1983**
**(against Defendant John Doe Supervisor)**

53. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

54. Defendant John Doe Supervisor was responsible for the training, supervision, discipline, retention, and oversight of the correctional officers involved in the May 26, 2024 incident alleged herein.

55. Before the attack on Plaintiff, prison officials had notice that Plaintiff feared for his safety and had requested protection on at least two occasions in the weeks leading up to the assault.

56. Upon information and belief, Defendant John Doe Supervisor knew of, condoned, authorized, encouraged, tolerated, or was deliberately indifferent to unconstitutional practices that created an obvious risk that officers would facilitate, permit, or fail to prevent serious inmate-on-inmate violence.

57. Upon information and belief, Defendant John Doe Supervisor failed to adequately train, supervise, monitor, investigate, and discipline officers despite known risks to inmate safety, including risks specifically affecting Plaintiff.

58. Upon information and belief, Defendant John Doe Supervisor also failed to ensure adequate training, supervision, and response protocols concerning the prompt medical treatment of inmates injured in assaults.

59. Defendant John Doe Supervisor's acts and omissions directly and proximately caused the violation of Plaintiff's constitutional rights and Plaintiff's injuries.

60. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

**Count 5**

**State Law Claim for Negligent Hiring, Retention, Supervision, and Training (against Defendant John Doe Supervisor)**

61. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

62. Defendant John Doe Supervisor owed Plaintiff a duty to exercise reasonable care in the hiring, retention, supervision, and training of correctional staff entrusted with inmate safety and security and the securing of appropriate post-incident medical care.

63. Defendant John Doe Supervisor breached that duty by hiring, retaining, supervising, and/or failing to discipline correctional officers whom the Defendant knew or should have known were unfit, dangerous, or likely to engage in the type of conduct described herein.

64. The assault on Plaintiff and the failure to secure prompt treatment were foreseeable and proximate results of that negligence.

65. As a direct and proximate result of the foregoing, Plaintiff suffered physical injury, pain and suffering, mental anguish, emotional distress, humiliation, and other damages.

**Count 6**
**State Law Claim for Negligence and/or Willful, Wanton, and Reckless Conduct (against Defendants Jenkins, Burton, and John Doe Supervisor)**

66. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

67. Defendants owed Plaintiff a duty to use ordinary care for his protection, to take reasonable steps to prevent foreseeable inmate violence, and to obtain appropriate medical and mental-health care after the assault.

68. Defendants breached those duties by facilitating, permitting, failing to stop, failing to prevent, and/or causing the May 26, 2024 assault upon Plaintiff, despite actual or constructive knowledge of the danger to him and despite Plaintiff's prior requests for protection.

69. Defendants further breached their duties by failing to secure timely and appropriate medical attention for Plaintiff after the assault.

70. Defendants' conduct was willful, wanton, reckless, and in conscious disregard of Plaintiff's rights and safety or, in the alternative, negligent.

71. As a direct and proximate result of Defendants' conduct, Plaintiff suffered physical injury, pain and suffering, mental anguish, emotional distress, humiliation, and other damages.

**Count 7**
**Cruel and Unusual Punishment and Excessive Force**
**42 U.S.C. § 1983—Eighth and Fourteenth Amendments**
**(against Defendants Herzog and Adelsperger)**

72. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

73. At all relevant times, Defendants Herzog and Adelsperger were acting under color of state law as correctional officers employed by the Ohio Department of Rehabilitation and Correction.

74. The Eighth Amendment prohibits the unnecessary and wanton infliction of pain upon prisoners and bars force applied maliciously and sadistically to cause harm.

75. By intentionally forcing Plaintiff back into his cell and dousing him with OC spray rather providing essential care, Defendants Herzog and Adelsperger used force against Plaintiff and/or caused force to be used against him maliciously and sadistically to cause harm rather than in a good-faith effort to maintain or restore discipline.

76. The actions of Herzog and Adelsperger directly and proximately caused Plaintiff's injuries and damages.

77. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

**Count 8**
**Deliberate Indifference to Medical Needs**
**42 U.S.C. § 1983—Eighth and Fourteenth Amendments**
**(against Defendants Jenkins, Burton and James Does)**

78. Plaintiff incorporates by reference the preceding paragraphs as if fully rewritten herein.

79. From on or about April 27, 2025 through at least April 29, 2025, Plaintiff exhibited serious medical needs, including physical injury, pain, trauma, and mental-health crisis.

80. Defendants knew of Plaintiff's serious needs, or those needs were sufficiently obvious that a reasonable officer would have recognized the necessity of prompt care.

81. Defendants failed to take reasonable steps to secure timely medical evaluation, treatment, and intervention for Plaintiff after the assault.

82. Defendants' acts and omissions constituted deliberate indifference to Plaintiff's serious medical needs.

83. As a direct and proximate result of the foregoing, Plaintiff is entitled to compensatory damages, punitive damages, attorney fees under 42 U.S.C. § 1988, costs, and other available relief.

## VI. Prayer for Relief

WHEREFORE, Plaintiff Keyown Pryor respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages to the extent permitted by law;

C. Attorney fees and costs, including under 42 U.S.C. § 1988 where applicable; and

D. Such other and further relief as the Court deems just and proper.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues within the Complaint.

Respectfully submitted,

*/s/Zoran Balac*

Emmett E. Robinson (0088537)
*erobinson@robinsonlegal.org*
ROBINSON LAW FIRM LLC
6600 Lorain Avenue #731
Cleveland, Ohio 44102
T: 216.505.6900 / F: 216.649.0508

Peter Pattakos (0082884)
*peter@pattakoslaw.com*
Gregory Gipson (0089340)
*ggipson@pattakoslaw.com*
Zoran Balac (0100501)
*zbalac@pattakoslaw.com*
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, Ohio 44333
P: 330.836.8533 | F: 330.836.8536

*Attorneys for Plaintiff Keyown Pryor*